**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **CHICAGO & VICINITY LABORERS'** ) | |
| **DISTRICT COUNCIL PENSION FUND,** ) | |
| **CHICAGO & VICINITY LABORERS'** ) | |
| **DISTRICT COUNCIL WELFARE FUND,** ) | |
| **CHICAGO & VICINITY LABORERS'** ) | |
| **DISTRICT COUNCIL RETIREE HEALTH** ) | |
| **AND WELFARE FUND, and CATHERINE** ) | |
| **WENSKUS, not individually but as** ) | |
| **Administrator of the Funds,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | **Case no.** |
| **v.** ) | |
| ) | **Judge:** |
| **WILLIAM A. RANDOLPH, INC., an** ) | |
| **Illinois corporation,** ) | |
| **Defendant.** ) | |

**COMPLAINT**

Plaintiffs, Chicago & Vicinity Laborers' District Council Pension Fund, Chicago & Vicinity Laborers' District Council Health & Welfare Fund, Chicago & Vicinity Laborers' District Council Retiree Health & Welfare Fund, and Catherine Wenskus, not individually but as Administrator of the Funds, (collectively the "Funds"), by their attorneys Patrick T. Wallace, Amy N. Carollo, G. Ryan Liska, Katherine C.V. Mosenson and Sara S. Schumann, and for their Complaint against William A. Randolph, Inc., state as follows:

**COUNT I**

**(Failure to Pay Benefit Contributions Revealed as Delinquent Pursuant to an Audit)**

1.      Jurisdiction is based on Sections 502(e)(1) and (2) and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§1132 (e)(1) and

(2) and 1145, Section 301(a) of the Labor Management Relations Act ("LMRA") of 1947 as amended, 29 U.S.C. §185(a), 28 U.S.C. §1331, and federal common law.

2. Venue is proper pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. §1132(e)(2), and 28 U.S.C. §1391 (a) and (b).

3. The Funds are multiemployer benefit plans within the meanings of Sections 3(3) and 3(37) of ERISA. 29 U.S.C. §1002(3) and 37(A). They are established and maintained pursuant to their respective Agreements and Declarations of Trust in accordance with Section 302(c)(5) of the LMRA. 29 U.S.C. § 186(c)(5). The Funds have offices and conduct business within this District.

4. Plaintiff Catherine Wenskus ("Wenskus") is the Administrator of the Funds, and has been duly authorized by the Funds' Trustees to act on behalf of the Funds in the collection of employer contributions owed to the Funds and to the Construction and General Laborers' District Council of Chicago and Vicinity Training Fund, and with respect to the collection by the Funds of amounts which have been or are required to be withheld from the wages of employees in payment of Union dues for transmittal to the Construction and General Laborers' District Council of Chicago and Vicinity (the "Union"). With respect to such matters, Wenskus is a fiduciary of the Funds within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A).

5. Defendant William A. Randolph, Inc. (hereinafter "Company"), is an Illinois corporation. Company does business within this District, and was at all times relevant herein an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. §1002(5), and Section 301(a) of the LMRA, 29 U.S.C. §185(c).

6. The Union is a labor organization within the meaning of 29 U.S.C. §185(a). The Union and the Company have been parties to successive collective bargaining agreements ("Long

2

forms"), at least since June 25, 1981. A copy of the Company's assignment of Collective Bargaining Rights executed by Company, which adopts and incorporates the Joint Agreements between the Union and various employer associations, and also bind Company to the Funds' respective Agreements and Declarations of Trust, is attached hereto as Exhibit A. Company's Long Form and the Joint Agreements are collectively referred to as the CBA or the Agreement.

7. The Funds have been duly authorized to serve as collection agents for the Union in that the Funds have been given authority to collect from employers union dues which should have been or have been deducted from the wages of covered employees. Further, the Funds have been duly authorized by the Construction and General Laborers' District Council of Chicago and Vicinity Training Fund ("Training Fund"), the Midwest Construction Industry Advancement Fund ("MCIAF"), the Mid-American Regional Bargaining Association Industry Advancement Fund ("MARBA"), the Chicagoland Construction Safety Council ("Safety Fund"), the Laborers' Employers' Cooperation and Education Trust ("LECET"), the Concrete Contractors Association ("CCA"), the CDCNI/CAWCC Contractors' Industry Advancement Fund ("Wall & Ceiling Fund"), CISCO Uniform Drug/Alcohol Abuse Program ("CISCO"), the Laborers' District Council Labor Management Committee Cooperative ("LDCLMCC"), the Will Grundy Industry Trust Advancement Fund ("WGITA"), the Illinois Environmental Contractors Association Industry Education Fund ("IECA Fund"), the Illinois Small Pavers Association Fund ("ISPA"), and the Chicago Area Independent Construction Association ("CAICA") to act as an agent in the collection of contributions due to those Funds.

8. The Agreement and the Funds' respective Agreements and Declarations of Trust obligate Company to make contributions on behalf of its employees covered by the Agreement for pension benefits, health and welfare benefits, and for the training, LECET, LDLMCC, LCCASE

and CISCO funds and to submit monthly remittance reports in which Company, *inter alia*, identifies the employees covered under the Agreement and the amount of contributions to be remitted to the Funds on behalf of each covered employee. Pursuant to the terms of the Agreement and the Funds' respective Agreements and Declarations of Trust, any contributions which are submitted untimely are assessed up to twenty percent liquidated damages, plus interest.

9.      The Agreement obligates Company to obtain and maintain a surety bond to insure future wages, pension and welfare contributions.

10.     The Agreement and the Funds' respective Agreements and Declarations of Trust require Company to submit its books and records to the Funds on demand for an audit to determine benefit contribution compliance.

11.     The Funds selected the independent auditing firm of Legacy Professionals, LLP to conduct the audit of the Company for the period covering October 1, 2015 through December 31, 2019 ("Legacy Audit"). On April 7, 2021, the Legacy Audit report was issued, reflecting the amounts Company owed to the Funds (See Exhibit B, copy of Legacy Audit and Summary), and a copy of same was sent to Company for its review and an opportunity to raise any written objections with the supporting evidence, or to provide payment of all amounts found owed.

12.     On July 9, 2021, Company responded by letter (See Attached Exhibit C), objecting to some of the Legacy Audit findings, but failing to provide any supporting evidence. Rather the Company provided a payment of a portion of the audit principal in the amount of $1,204.88, leaving a balance owed for the remaining principal owed per the Legacy Audit report, plus liquidated damages and accumulated interest.

13.     The Funds' field department representative referred this matter to the Funds' legal department and the undersigned attempted to contact Company via email and telephone to resolve

this matter by either payment or for Company to present supporting documentation for its objection to the audit findings. Company failed to do either.

14.     The Legacy Audit of Company's books and records for the time period of October 1, 2015 through December 31, 2019 revealed that Company performed covered work during the audit period, and notwithstanding the obligations imposed by the Agreement, and the Funds' respective Agreements and Declarations of Trust, Company:

(a)     failed to report and pay contributions in the amount of $2,480.40 to Plaintiff Chicago & Vicinity Laborers' Pension Fund for the audit period of October 1, 2015 through December 31, 2019 thereby depriving the Pension Fund of contributions, income and information needed to administer that Fund and jeopardizing the pension benefits of the participants and beneficiaries;

(b)     failed to report and pay contributions in the amount of $1,344.88 to Plaintiff Chicago & Vicinity Laborers' Welfare Fund for the audit period of October 1, 2015 through December 31, 2019, thereby depriving the Welfare Fund of contributions, income and information needed to administer that Fund and jeopardizing the health and welfare benefits of the participants and beneficiaries;

(c)     failed to report and pay contributions in the amount of $637.70 to the Laborers' District Council's Retiree Health and Welfare Fund for the audit period of October 1, 2015 through December 31, 2019, thereby depriving the Retiree Welfare Fund of contributions, income and information needed to administer that Fund and jeopardizing the health and welfare benefits of the participants and beneficiaries;

(d)     failed to report and pay contributions in the amount of $112.05 to the Laborers' Training Fund for the audit period of October 1, 2015 through December 31, 2019, thereby

depriving the Training Fund of contributions, income and information needed to administer that Fund and jeopardizing the training fund benefits of the participants and beneficiaries;

      (e)     failed to report and pay contributions in the amount of $22.53 owed to Laborers' District Council Labor Management Committee Cooperative ("LDCLMCC") for the audit period of October 1, 2015 through December 31, 2019, thereby depriving the LDCLMCC of contributions, income and information needed to administer that Fund and jeopardizing the benefits of the participants and beneficiaries;

      (f)     failed to report and pay contributions in the amount of $9.28 owed to Laborers' Employers' Cooperation and Education Trust ("LECET") for the audit of October 1, 2015 through December 31, 2019, thereby depriving LECET of contributions, income and information needed to administer that Fund and jeopardizing the benefits of the participants and beneficiaries.

      (g)     failed to report and pay contributions in the amount of $1.33 owed to CISCO, $7.95 owed to IAF and $2,65 owed to LCCASE for the audit period of October 1, 2015 through December 31, 2019, thereby depriving CISCO, IAF and LCCASE of contributions, income and information needed to administer those respective funds and jeopardizing the benefits of the participants and beneficiaries; and

      (h)     failed to obtain and maintain a surety bond.

A true and accurate copy of the audit and audit summary sheet are attached hereto as Exhibits B.

      15.     Under the terms of the Agreement and the Funds' respective Agreements and Declarations of Trust, Company owes $797.60 in liquidated damages plus $816.51 in accumulated interest for all unpaid contributions revealed by the Legacy Audit for the period of October 1, 2015 through December 31, 2019 (See Exhibit B).

      16.     Under the terms of the Agreement and the Funds' respective Agreements and

Declarations of Trust, Company is liable for the costs of any audit which reveals unpaid contributions or requires the Funds to file litigation to gain the Company's compliance. Accordingly, Company owes $2,800.15 to the Funds for the Legacy Audit costs for the audit of the period, covering October 1, 2015 through December 31, 2019 (See Exhibit B).

17.     On July 9, 2021, Company made a partial payment in the amount of $1,204.88 toward some amount of the Legacy Audit findings, but has since failed to provide further payment or evidence to support any revision to the Legacy Audit findings, despite repeated requests to do so by the undersigned. Company's actions in failing to submit full payment upon the audit to which it submitted its books and records violate Section 515 of ERISA, 29 U.S.C. §1145.

18.     Pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. §1132 (g)(2), Section 301 of the LMRA, 29 U.S.C. §185, the terms of the Agreement and the Funds' respective Trust Agreements, Company is liable to the Funds for unpaid contributions, as well as interest and liquidated damages on the unpaid contributions, accumulated liquidated damages, audit costs, and reasonable attorneys' fees and costs, and such other legal and equitable relief as the Court deems appropriate.

19.     The Company's actions in failing to report and pay timely the contributions owed per the Legacy Audit, and failing to obtain and maintain a bond violate Section 515 of ERISA, 29 U.S.C. §1145, and Section 301 of the LMRA. 29 U.S.C. §185 and federal common law interpreting ERISA, 29 U.S.C. §1132 (g)(2).

WHEREFORE, Plaintiffs respectfully request this Court enter a judgment against Defendant William A. Randolph, Inc., as follows:

a.      entering judgment in the Funds' favor and in sum certain against Defendant Company on the amounts found due and owing pursuant to the Legacy Audit, interest, liquidated damages, audit costs, and attorneys' fees and costs after crediting Company's partial payment;

b.      ordering Defendant Company to obtain and maintain a surety bond in accordance with the collective bargaining agreement; and

c.      awarding Plaintiffs any further legal and equitable relief as the Court deems appropriate.

## COUNT II
### (Failure to Submit Reports and Pay Union Dues)

20.      Plaintiffs re-allege paragraphs 1 through 19 as though fully set forth herein.

21.      Pursuant to agreement, the Funds have been duly designated to serve as collection agents for the Union in that the Funds have been given the authority to collect from employers union dues which should have been or have been deducted from the wages of covered employees.

22.      Dues reports and contributions are due by the 10th day following the month in which the work was performed.  Dues reports and contributions that are not submitted in a timely fashion are assessed liquidated damages at the rate of ten (10) percent.

23.      Notwithstanding the obligations imposed by the Agreement, Company has performed covered work during the months of October 1, 2015 forward and has failed to withhold and/or report to and forward union dues that were deducted, or should have been deducted, from the wages of its workers for that period, thereby depriving the Union of income and information.

24.      Pursuant to the Agreement, Company is liable to the Funds for the unpaid union dues, as well as liquidated damages, audit costs, reasonable attorneys' fees and costs as the Union's collection agent, and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against

8

Defendant William A. Randolph, Inc.:

      a.     ordering Company, to submit the amounts found owed for Union dues per the Legacy Audit, covering October 1, 2015 through December 31, 2019; and

      b.     entering judgment in sum certain against Company, on the amounts found owed, as revealed by the reports to be submitted, including dues contributions, liquidated damages, and attorneys' fees and costs; and

      c.     awarding Plaintiffs any further legal and equitable relief as the Court deems appropriate.

                            Respectfully Submitted,

November 2, 2021           Chicago & Vicinity Laborers' District Council Pension
                            Fund, et al.,

                            By: /s/ Sara S. Schumann

Sara S. Schumann
Laborers' Pension and Welfare Funds
Office of Fund Counsel
111 W. Jackson, Suite 1415
Chicago, IL 60604
SaraS@chilpwf.com
(773) 255-9878